IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| EAST TENNESSEE NATURAL GAS CO., | ) ) | Case No. 4:02-CV-00225 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | |
| | ) | |
| 1.04 ACRES IN SMYTH COUNTY, VIRGINIA, CLAYBOURNE B. GWYN, et al., | ) ) ) | By: Jackson L. Kiser Senior United States District Judge |
| | ) | |
| Defendants. | ) | |

Before me are the Defendant's *Objections to the Commission's Report*. For the reasons stated below, I will overrule all four of the specific *Objections* posed by the Defendant.

**I.      PROCEDURAL HISTORY**

This case was heard in the U.S. District Court in Abingdon, Virginia during the week of August 22, 2005 before three Commissioners. On December 14, 2005, the Commission filed its *Findings of Fact and Conclusions of Law*. On January 3, 2006 the Defendant filed *Objections* to *the Report of the Commissioners,* and on January 20, 2006 the Plaintiff filed a *Response* to the Defendant's *Objections*. On March 3, 2006 a hearing was held before this Court regarding the Defendant's *Objections*.

**II.      STATEMENT OF FACTS**

The property that is the subject of this case was taken on June 5, 2003. Claybourne Gwyn ("Defendant") owns 36.75 acres of land in Smyth County ,Virginia. The property is on the north side of Highway 16 between Marion, Virginia and Hungry Mother State Park. The Defendant bought the property in 1986. At that time, East Tennessee Natural Gas ("ETNG" or

Case 4:02-cv-00225-JLK   Document 101   Filed 04/28/06   Page 1 of 17   Pageid#: 303

"Plaintiff") already owned a binding thirty-foot-wide easement of record across the Defendant's property. Prior to the condemnation which is the subject of this case, the Plaintiff owned, maintained, and operated an eight-inch in diameter natural gas pipeline within the original thirty-foot-wide easement. When the Defendant acquired the property, the easement and eight-inch pipeline were in place and operational.

In this case, the Plaintiff acquired the right to use 1.04 acres of the Defendant's property as temporary workspace and as a temporary access road for purposes of construction of a second twenty-four-inch in diameter pipeline within the original thirty-foot wide easement. The addition of the second pipeline does not change the limitations of use which existed prior to condemnation within the 30-foot wide easement. The Plaintiff has no right to limit the use of the Defendant's land outside the easement. In addition, the Defendant's property is burdened by a Virginia Gas Company easement, a Town of Marion easement for an access road to its water tanks, and a zoning restriction that requires a minimum of two acres of land before a home can be built – this zoning affects the area of the Defendant's land adjacent to Highway 16 for a depth of 200 feet.

The temporary workspace on the Defendant's property is adjacent to the original easement area and extends 70 feet south of the existing easement toward Highway 16. For purpose of construction, the Plaintiff used the temporary workspace and permanent easement area.

## III.    STANDARD OF REVIEW

Prior to the hearing before the Commission, the parties in this case agreed to have this case heard by a Commission, and agreed that the standard of review for objection to the

-2-

Commission's *Report*, pursuant to *Federal Rule of Civil Procedure* 53(g)(3)(A), would be a standard of clear error. This stipulation and procedure was memorialized by an *Order* of this Court dated September 29, 2004.

A finding is "clearly erroneous" when the reviewing court views all the evidence and is left with the definite and firm conviction that a mistake has been committed. *Anderson v. Bessmer City*, 470 U.S. 564, 573 (1984), citing *U.S. v. U.S. Gypsum Company*, 333 U.S. 364, 395 (1948). This standard does not entitle a reviewing court to reverse the finding of the trier of fact simply because it would have decided the case differently. The reviewing court's function is not to decide factual issues de novo. *Id.*; *Zenith Radio Corporation v. Hazeltine Research, Inc*., 395 U.S. 100, 123 (1969). If the findings by the trier-of-fact are plausible in light of the record viewed in its entirety, the reviewing court may not reverse the trier-of-fact even if the reviewing court would have weighed the evidence differently had it been sitting as the trier of fact. *Id.* at 574. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous. *Id.*; *U.S. v. Yellow Cab Company*, 338 U.S. 338. 342 (1949).

## IV.    COMMISSION'S FINDINGS

The Commission found that the highest and best use of the Defendant's property is for medium to high scale residential development. The Commission also held that the land should be appraised as a whole and not with separate non-platted lots carved out of the whole as the Defendant's chief appraiser, Larry Johnston, suggested. The Commission found that the Defendant's driveway was restored as nearly as practical to its original condition. It found that the town of Marion's access road was used by the Plaintiff as an access road for construction purposes, but that the Defendant's driveway was not so used.

-3-

The Commission could not agree with either party's appraiser regarding the difference in value of the land before and after the take. James Johnston, testifying for the Plaintiff, found little or no impact on market value caused by the addition of the twenty-four-inch pipeline and testified to damage of $245. Larry Johnston, testifying for the Defendant, found that the damage was $28,342; however, he included some consequential damages and reached a much higher net total loss figure by adding additional factors.

The Commission found that there was some market value loss caused by the burden of the addition of a large pipeline. The Commission held that public perception and natural distaste for easements across high or medium land residential property cause a willing seller and a willing buyer to negotiate at a lower figure. The Commission stated that a pipeline affects fair market value in such a way whether the buyer's perception and fears of pipelines and pipeline maintenance are real or imagined.

The Commission had some difficulty with the credibility and method of appraisal of Larry Johnson, and likewise felt that James Johnston was overly conservative in finding littler or no damage under the facts of this case. The Commission relied heavily, but not entirely, on its own view of the property when making its residue damage determination. The Commission may have awarded more residue damage if the evidence had been stronger for the Defendant on this issue. The Commission awarded $10,000.00 for residue damages and found that the Plaintiff's suggested total award of $4,455.00 was not adequate under the given circumstances.

In its *Findings of Fact and Conclusions of Law*, the Commission found:

1. Defendant is entitled to $10,000.00 in damages based upon the before and after value of the land as a whole. This is based on reasons and figures stated herein. Our finding is within the evidence range;

-4-

2.  Defendant is entitled $1,210.00 for rental value of the temporary workspace and access road; and

3.  Defendant is entitled to $3,000.00 from cutting trees on Gwyn property.

We have considered all claims made. Any claimed losses not listed are denied for lck of sufficient proof. We adopt Plaintiff's arguments for not awarding additional consequential damages.

Based on the view taken by the Commission and the evidence, it awarded the Defendant $14,210.00.

## V.     DISCUSSION REGARDING DEFENDANTS' OBJECTIONS

### A.      Defendant Gwyn Owns Multiple Tracts

The Defendant first objects by arguing that there is evidence – the Gwyn deed and the ETNG original easement deed – showing that Gywn owned four separate parcels of land in three tracts. The Defendant argues that in spite of this evidence, the Commission made clear error in finding that "Claiborne [sic] Gwyn . . . owned 36.75 acres of land in Smythe [sic] County, Virginia."

The Defendant further argues that the land on which the temporary work space was granted should have been considered a separate lot. The Commission found that the Defendant is entitled to $1,210.00 for rental value of the temporary workspace and access road. The Defendant points out that its appraiser recognized this separate area of the Gwyn land, and valued it at $23,000.00 per acre in his analysis and testimony, and gave the Commission supporting comparable sales to justify his appraisal. The Defendant further points out that the temporary construction rights were acquired by ETNG for two (2) years. The Defendant argues that the award given by the Commission for the temporary work space, based on rental value, is artificially low because the Commission failed to value the work space as part of a separate lot;

-5-

the Defendant asks this Court to review this determination.

In response to the Defendant's first objection, the Plaintiff points out that the Defendant never specifically alleges what finding of fact made by the Commission is clearly erroneous. The Plaintiff argues that the Commission made no finding regarding how many tracts make up the Gwyn parcel, but instead found:

> As to highest and best use of the Gwyn property, we find that it was for medium to high scale residential development. We feel that the land should be appraised as a whole and not with a separate non-platted lot carved out of the whole as Gwyn's chief appraiser, Mr. Larry Johnston suggests.

The Plaintiff argues that this finding was supported by both the evidence that the property was purchased as one parcel and by the expert testimony of James Johnston that the property should be appraised as a whole parcel with a single highest and best use. The Plaintiff argues that the Defendant's argument, that his property is made up of multiple tracts which would have resulted in higher compensation for him if considered separately, fails to recognize that the proper measure for damages for the use of temporary workspace is rental value of the property – not the per acre value of the property if sold separately. Finally, the Plaintiff argues that the land was conveyed to the Defendant by one deed and was used by him as one parcel; therefore, the Commission properly valued the property as a whole with its highest and best use as residential development and calculated a rental value based upon the evidence presented.

The Commission did not commit clear error in making its findings based on the property as a "whole" rather than as individual tracts. Although the Gwyn deed and the ETNG original easement deed describe different parcels, the parcels are contiguous and are owned by a single owner. Therefore, the Defendant has the right to obliterate the property lines and divide or sub-divide the property in any manner he chooses.

-6-

With regard to the Defendant's *Objection* to the Commission's valuation of the temporary workspace, the Defendants never claim that the Commission committed clear error in not considering the land on which the temporary work space was located to be separate land. The Defendant merely asks this Court to review the Commission's decision. Furthermore, the Defendant never proffers how the Commission might have come to a more acceptable figure or what such a figure might be. The standard of review in this case is clear error and none can be found when the Defendant's objection does not allege it.

**B.**      **Defendant is Due Compensation for Second Pipeline**

The Defendant argues that he deserves compensation for the installation of the twenty-four-inch pipeline or payment for construction use of his land for two years inside the original easement. The Defendant points out that the Commission never expressly held that there is no right to compensation for the right to install the second, twenty-four inch, pipeline. However, the Defendant argues that by not specifically assigning any value or payment for the use of the .434 acres within the original thirty-foot easement which was used by ETNG for construction and which is the location of the new twenty-four inch pipeline, the Commission in effect made such a finding.

In its *Findings* (*Page 2*), the Commission states:

In the present condemnation action, The Company acquired the right to use 1.04 acres of the Gwyn property as temporary workspace and temporary access road for purposes of construction of a second 24 inch diameter pipeline within the original 30-foot easement. The addition of the second pipeline does not change the limitations of use which existed prior to condemnation within the 30-foot easement. The Company has no right to limit the use of the Gwyn land outside the said easement.

The Commission further states in its *Findings* (*Page 5, Paragraph 7*) that it was instructed by this Court on November 1, 2004 that the landowner is not legally entitled to

-7-

compensation for easement rights obtained in an earlier original grant.

In its *Response*, the Plaintiff argues that the Commission did award the Defendant compensation for the construction of the second pipeline within the easement. The Plaintiff points out that although it argued in this case that there was no decrease in the fair market value of the property after the take because the property was already encumbered by a prior easement for the Plaintiff's existing eight-inch pipeline, the Commission disagreed and awarded the Defendant $10,000.00 for the difference in the before and after value of his property. The Defendant's expert, Larry Johnston, testified that the damage to the Defendant's property was $28,342.00 – based on the value of the land before and after the take. The Plaintiff argues that instead of citing a clear error made by the Commission, the Defendant's objection is merely a disagreement with the value awarded.

This Court did issue instructions to the Commission in this case but those instructions were given on November 18, 2004 – not November 1, 2004 as stated by the Commission in its *Findings*. Additionally, those instructions stated nothing about the landowner not being legally entitled to compensation for easement rights obtained in an earlier original grant. However, even if this Court had instructed the Commission in such a manner, it is irrelevant. The fact that the Commission could not compensate the Defendant for easement rights it transferred away in an earlier (original) grant would not prevent the Commission from compensating the Defendant for new easement rights, not accounted for in the earlier (original) grant, but which occur on the same piece of land that was the subject of the prior (original) easement agreement. That is, the Commission could not re-compensate the Defendant for the easement that he had already given the Plaintiff, and for which the Defendant has already been compensated – the easement which

-8-

contained the eight-inch pipeline. However, the Commission could, and consequently did, require the Plaintiff to compensate the Defendant for putting a new twenty-four-inch pipeline in the original easement because the terms of the original easement did not account for a twenty-four inch pipeline.

In this case, the original easement (*Defendant's Exhibit 2*) from 1964, in which the Plaintiff was given the right to install an eight-inch pipeline, can only be read to say that the Plaintiff was being given the right to install one, presumably eight-inch, pipeline because the deed expressly grants "a perpetual right of way for the purpose of laying, constructing, maintaining . . . *a* pipe line . . ." (emphasis added). When the easement was granted on September 18, 1964, it was for an easement for the laying and maintaining of a single eight-inch pipeline and not for the laying and maintaining of newer and bigger pipelines thirty-nine years later.

The additional pipeline, however, did not place an additional restriction on the Defendant's use of his land. The legal rights acquired by the condemnation were virtually identical to the rights granted by the owners in the 1964 grant of easement. The only potential additional burden on the land would be the possible increase of maintenance activity because of the second pipeline. No additional land was acquired and the Commission made no specific award for any additional rights acquired by the Plaintiff. The Commission did award $10,000.00 to the Defendant based on the value of his land as a whole before the take and after the take – which is an appropriate measure of just compensation. The failure of the Commission to itemize the components of its award does not invalidate it.

**C.**    **Commission Failed to Address Actual Construction Damages**

-9-

The Defendant argues that he deserves $3,720.00 for actual damage done to his property by the Plaintiff. The Defendant called Charles Williams, an experienced nurseryman familiar with the Defendant's land, to testify before the Commission. The Defendant also called Walter Robinson, the Smyth County Extension Agent, who testified before the Commission that the repairs mentioned by Charles Williams were necessary; namely that top soil would have to be imported to the Defendant's property so that restoration work could be performed. Furthermore, the Defendant alleges that the Commission was directed by this Court in a verbal instruction at a hearing on November 29, 2004, to consider actual damages.

On *Page 5* of its *Findings of Fact*, the Commission stated:

We have considered all claims made. Any claimed losses not listed are denied for lack of sufficient proof. We adopt Plaintiff's arguments for not awarding additional consequential damages.

The Defendant argues that the Commission made clear error in not awarding him actual damages because the Plaintiff never addressed the issue in its *Proposed Findings of Fact*. That is, according to the Defendant, the Commission could not have "adopt[ed] the Plaintiff's arguments for not awarding additional consequential damages" in the form of actual damages because the Plaintiff never made an argument against the Defendant's request for such an award. The Defendant points out that he had two witnesses testify to the need for the spreading of top soil on a portion of his land after the Plaintiff completed the pipeline installation. However, the Defendant also admits that the testimony of at least one of his witnesses was "subject to rigorous cross examination."

In its *Response*, the Plaintiff argues that evidence presented by the Defendant on this issue was disputed and contradicted by evidence it offered. Furthermore, the Plaintiff argues that

the Commission's own viewing of the property could have been used to contradict the evidence presented by the Defendant. The Plaintiff argues that the Commission, as it stated, considered evidence regarding actual damages and rejected the Defendant's claim for "lack of sufficient proof."

The Plaintiff states that it did not address any construction damages in its *Proposed Findings of Facts* beyond the value of the cut trees because the property was fully and properly restored following construction. Furthermore, the Plaintiff points out that it presented both an opening statement that included its position, that the Defendant's property was properly restored, and a closing argument in which it took the same position and pointed out the Defendant's lack of proof on this issue. Therefore, the Plaintiff argues that the Commission did not clearly error in "adopt[ing] Plaintiff's arguments for not awarding additional consequential damages."

I find that the Plaintiff's "rigorous cross examination," opening statement, and closing argument constitute an argument by the Plaintiff against awarding the Defendant actual damages. The position asserted by the Plaintiff coupled with the Commission's own view of the property provided the Commission with ample evidence to "adopt Plaintiff's arguments for not awarding additional consequential damages." The Commission therefore did not commit clear error in not awarding the Defendant additional consequential damages.

### D. Court Rulings Were Clearly Erroneous

Though it was not mentioned by defense counsel during oral argument, the Defendant argued in his written *Objections to the Report of the Commissioners* that a Commissioner made a clear error in excluding rebuttal testimony of Brenda Gwyn during trial. Mrs. Gwyn had been present in the hearing room during the testimony of the Defendant's (her husband's) witnesses,

-11-

but was excluded from the room when the Plaintiff's witnesses began to testify. She was not identified as a witness in the witness disclosures, and the Defendant only attempted to use her to rebut the testimony of a Plaintiff's witness who said that the Plaintiff did not use the Defendant's residential driveway outside of the construction area. Since her testimony was only in rebuttal, and she was not in the courtroom when the Plaintiff's witness testified, the Defendant believes her testimony should not have been excluded. Her testimony was preserved out of the presence of the Commission. Without the benefit of her testimony, the Commission found that the driveway was not used by the Plaintiff outside of the construction area.

In its *Response*, the Plaintiff argues that while rebuttal witnesses need not be listed on pretrial witness lists, such witnesses should be disclosed during the discovery process as persons having knowledge of facts in the case. The Plaintiff points out that it submitted written discovery to the Defendant that specifically requested the identity of all people having knowledge of the issues in dispute. The Plaintiff claims that the Defendant never presented Brenda Gwyn's name nor mentioned her before trial. Furthermore, the Plaintiff points out that in spite of its invoking *Federal Rule of Evidence 615*, which requires witnesses to be excluded from the hearing, Brenda Gwyn sat and observed the first full day of trial and the testimony of witnesses.

The Plaintiff concludes that Brenda Gwyn's testimony was offered to both contradict the Plaintiff's witnesses and to corroborate the Defendant's (her husband's) testimony regarding the Plaintiff's use of the Defendant's driveway during construction. Brenda Gwyn heard a portion of this relevant testimony while she was seated in the courtroom, therefore the Plaintiff contends that it was proper for the Commissioner to exclude her proffered testimony.

-12-

The Commissioner had good reasons for excluding the testimony of Brenda Gwyn during the hearing in this case: her name did not appear on any witness lists; the Defendant never identified her as a person with valuable information despite the Plaintiff's request for such identification; and in spite of the Plaintiff's *Motion* made pursuant to *FRE 615,* she observed the very testimony, made by her husband, that she would have been called on to corroborate. It cannot be said that the Commissioner committed clear error in excluding the testimony of Brenda Gwyn when his ruling was based on several rational factors.

The Defendant also objects to a Commissioner's exclusion of the testimony of Charles Williams. On August 5, 2005, the Plaintiff filed a *Motion in Limine* to exclude the testimony of Charles Williams. In its *Motion*, the Plaintiff argued that the opinion, testimony, and report of the Defendant's expert, Charles Williams, should be excluded because it included improper damage valuation. The Plaintiff specifically argued that while the Defendant was offering Williams as an expert on valuing trees, Williams could only offer evidence on the replacement value of trees, and Virginia law demands that the proper valuation is the market value. In its four-page *Memorandum in Support*, the Plaintiff cites precedent from Virginia Courts that clearly establishes fair market value as the proper damage valuation for trees in condemnation proceedings – as opposed to replacement costs.

On August 19, 2005, the Defendant filed a *Response to the Plaintiff's Motion in Limine*. In its seventeen-page *Memorandum in Response*, the Defendant cites precedent from Virginia Courts that also clearly establishes fair market value as the proper damage valuation for condemnation proceedings, but that hints the Virginia Supreme Court could potentially establish replacement costs as the proper valuation if the proper circumstances were given it.

-13-

The Defendant further cites a Fourth Circuit case, *U.S. v. Wise*, where the District judge's jury instruction, where he told the jury that it could consider the replacement costs of shrubs and trees in determining the fair market value for purposes of damage valuation, was upheld . 131 F.2d 851 (1942). Furthermore, in its *Response* (*Page 10),* the Defendant points out the oral instruction given by this Court to the Commission on November 29, 2005 (*Transcript, Page 19*):

> But they [Greer and Gwyn] also feel, and I would agree with this, that if the pipeline company does not restore the property to its original condition, then there would ben an additional element of damages, which as the former commission considered. Such as the value of timber and that sort of thing, or in this case, **part of the value would be the restoration of the property to its original condition**. (emphasis added by Defendant in his *Response*).

The Defendant then argues that a "restoration of the property to its original condition" infers that the Defendant should be compensated the replacement value of the trees and shrubs taken by the Plaintiff from the residential portion of his property so he could "restor[e] the property to its original condition."

On September 7, 2005 a Commissioner entered an *Order* in which he succinctly stated:

> Plaintiff's motion in limine to exclude the testimony of Charles Williams is granted in part and denied in part. Mr. Williams' testimony regarding the replacement value of the trees cut by ETNG on each property is excluded. The Chairman finds that replacement value is not the proper measure of damages as a matter of law. The remaining testimony of Mr. Williams is permitted.

In its *Response to the Defendant's Objections to the Commission's Findings of Fact*, the Plaintiff argues that the Defendant is procedurally barred from objecting to the Commissioner's ruling in the *Order* dated September 7, 2005. The Plaintiff points out that *Rule 53(g)(2)* of the *Federal Rules of Civil Procedure* provides that "a party may file objections to – or a motion to adopt or modify – the master's order, report, or recommendation no later than 20 days from the time of the master's order . . ." The Plaintiff argues that the time to object to the

-14-

Commissioner's *Order* expired on October 7, 2005. The Plaintiff further points out that if the Defendant had timely objected, this Court could have ruled on the objection in time for the Commission to evaluate the excluded evidence had this Court agreed with the position taken by the Defendant. Having failed to timely object, the Plaintiff argues that the Defendant's objection should be overruled.

The Plaintiff goes further to argue that even if the Court were to consider the Defendant's untimely objection, the objection must fail. Based on the arguments made in its *Memorandum in Support of its Motion in Limine*, which the Plaintiff incorporated into its *Response*, the Plaintiff argues that the Commissioner's exclusion of Charles Williams' testimony was pursuant to precedent, and was at a minimum not clearly erroneous.

The Plaintiff cited cases from Virginia Courts which establish that damage valuation is based on fair market value in Virginia – the difference between the fair market value before and after a taking. The Defendant cited cases from Virginia and federal courts which establish that damage valuation is based on fair market value in Virginia, but which arguably suggest that in certain factual situations damage valuation can be based on replacement costs, or at the very least, replacement costs can be used to determine the loss in fair market value.

I agree with the Plaintiff that the Defendants' *Objection* to the Commission's *Order* excluding Williams' testimony is time barred by *Rule 53(g)(2)* of the *Federal Rules of Civil Procedure*. The Plaintiff rightly points out that if the Defendants had timely objected to the *Order* and had I granted their objection, then the Commission could have heard Williams' testimony. This points out the underlying wisdom of the rule. To delay appealing an evidentiary objection until the Commission has completed its work would be disruptive to the procedural

-15-

framework of Rule 53.

The *2003 Amendments to Federal Rule of Civil Procedure 53(g)(2)* state: "Although a court may properly refuse to entertain untimely review proceedings, the court may excuse the failure to seek timely review." Even if I were to excuse the Defendant's failure to seek timely review, or even if the Defendant's *Objection* was timely, the facts of this case do not warrant a finding that the Commission committed clear error in not allowing Charles Williams to testify.

In this case, the facts do seem to warrant the use of replacement costs instead of fair market value. The trees and shrubs that were allegedly damaged by the Plaintiff, that the Defendant had to replace, were trees and shrubs located on the residential portion of his land, not in the forest. The trees and shrubs that were damaged certainly had to be replaced, and the cost of replacement would seemingly be the just compensation. At the very least, like the Fourth Circuit suggested in *U.S. v. Wise*, it seems that the replacement costs of the trees and shrubs could have provided insight into the loss in fair market value of the Defendant's property due to the damage sustained by the trees and shrubs.

I believe that the Commissioner did make an error in not allowing Charles Williams to testify. However, I do not believe that he made a clear error. The state and federal cases cited by both parties in their briefs regarding the Plaintiff's *Motion in Limine* to exclude Williams' testimony are less than explicitly instructive. Perhaps, as the Fourth Circuit suggested in *U.S. v. Wise*, testimony regarding the replacement costs of the trees and shrubs could have aided the Commission, as the finder of fact, in determining the ultimate loss in fair market value of the Defendants' property.

However, the Commissioner was forced to make a judgment call as to whether the trees

-16-

and shrubs about which Williams was poised to testify, were residential trees and shrubs. Upon determining that the trees and shrubs were not residential, the Commission then made another judgment call in deciding to award the market value of the trees as a separate item of damage rather than considering it as a diminution of market value. The Commission awarded the Defendant $3,000 as just compensation for the cutting of the trees and shrubs on his property; Williams was prepared to testify that the replacement cost of the trees and shrubs was an estimated $7,460.27. In making their judgment calls, which were based on the evidence presented and included a view of the property, neither the Commissioner nor the Commission made clear error. Therefore, I believe that the Defendant's objection, that the Commissioner made clear error in not allowing Williams to testify about replacement costs, should be overruled.

## VI.    CONCLUSION

For the reasons stated above, I will overrule all four of the specific *Objections* posed by the Defendant.

The clerk is directed to send a copy of this *Memorandum Opinion* and the accompanying *Order* to all counsel of record.

Entered this 28th day of April, 2006.

s/Jackson L. Kiser_____
Senior United States District Judge

-17-